[No. A058303. First Dist., Div. Five. Apr. 22, 1993.]

AUDREY SYLVE, Plaintiff and Appellant, v.
LENORA RILEY et al., Defendants and Respondents.

**COUNSEL**

Robert De Vries and Carolyn Gold for Plaintiff and Appellant.

Ronald J. Souza and Mary Margaret Ryan for Defendants and Respondents.

## OPINION

KING, J.—San Francisco's rent control ordinance allows a landlord to evict a tenant to permit a designated relative to occupy the premises, but specifies no time limit within which that occupancy shall commence. ▆ Under the facts in this case, we hold that the question of when the former tenant discovered or should have discovered the relative never occupied the premises, so as to trigger the running of the statute of limitations for bringing a wrongful eviction action, is a question of fact which precludes the entry of summary judgment.

Audrey Sylve appeals from an order dismissing her wrongful eviction action after summary judgment in favor of landlords Lenora and Homer Riley, averring the action was not barred by the applicable statute of limitations.

On or about May 3, 1988, Sylve received a 30-day notice to terminate tenancy alleging the Rileys sought to recover possession "in good faith, without ulterior reasons, and with honest intent, for the use and occupancy as the principal residence of the landlord's son and daughter-in-law for a period of at least 12 continuous months," in accordance with section 37.9, subdivision (a)(8), of San Francisco's rent stabilization and arbitration ordinance (S.F. Admin. Code, ch. 37). In a conditional order for entry of unlawful detainer judgment pursuant to stipulation, dated December 6, 1988, Sylve specifically reserved the right to sue the Rileys should their son and daughter-in-law not in fact move in. She vacated the premises on or about December 27. An amended order for stipulation for entry of unlawful detainer judgment, filed March 24, 1989, contained the same reservation of the right to sue.

In May 1989, Sylve noticed that her former apartment appeared to be vacant. In January 1990, when it still appeared vacant, she concluded the reasons stated in her eviction notice had been false. On December 31, 1990, Sylve filed a complaint against the Rileys for violation of the rent ordinance, negligence and fraud. On November 13, 1991, the Rileys filed a motion for summary judgment (Code Civ. Proc., § 437c) on the grounds the action was barred by the applicable statute of limitations. On November 26, they filed a cross-complaint alleging intentional infliction of emotional distress and trespass. After a hearing, the trial court granted the summary judgment motion. The judgment of dismissal entered on January 30, 1992, was not appealable because the cross-complaint was still pending. (*California Dental Assn.* v. *California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 59 [271 Cal.Rptr. 410].) On May 18, 1992, the trial court filed an order

dismissing the cross-complaint pursuant to stipulation. Sylve filed a timely notice of appeal. (*Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967, 971 [227 Cal.Rptr. 718].)

The mandatory treble damages provision of San Francisco Administrative Code section 37.9, subdivision (f) brings this action within the one-year statute of limitations prescribed by Code of Civil Procedure section 340, subdivision (1). (*Menefee* v. *Ostawari* (1991) 228 Cal.App.3d 239, 243-245 [278 Cal.Rptr. 805].) ■ The limitations period begins to run upon service of a facially invalid eviction notice. (*Id.* at pp. 245-246 ["change of ownership" not statutorily authorized reason for eviction].) ■ Sylve contends the limitations period was tolled in this case until January 1990, when she concluded the Rileys had never intended to move their son into her former apartment, or in the alternative, that there was a triable issue of fact as to whether she knew the eviction was improper as early as May 1989.

■ ■ ■ ■ Under the delayed discovery rule,[1] the limitations period does not begin to run until a plaintiff discovers or could have discovered through the exercise of reasonable diligence all facts essential to her cause of action. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 407 [163 Cal.Rptr. 711].) ■ The Rileys contend Sylve was insufficiently diligent in investigating her suspicion that their son was not occupying the premises. ■ Whether reasonable diligence was exercised is generally a question of fact (*id.* at p. 409) precluding summary judgment.

■ The Rileys cite *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 [245 Cal.Rptr. 658, 751 P.2d 923], for the proposition that once Sylve suspected wrongdoing, she had a duty to investigate, and *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868 [191 Cal.Rptr. 619, 663 P.2d 177], for the proposition that Sylve's suspicion put her on inquiry notice of a potential wrongdoing which an investigation would have confirmed. Unlike these cases, however, this is not a case where the uncontradicted facts are susceptible of only one legitimate inference. (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1112.)

---

[1]The Rileys point out that Sylve expressly eschewed reliance on the delayed discovery rule below, and insist she cannot assert a new theory on appeal. "The general rule is that a party to an action may not for the first time on appeal change the theory upon which the case was tried. . . . The exception to this rule exists where a question of law only is presented on the facts appearing in the record." (*Curcio* v. *Svanevik* (1984) 155 Cal.App.3d 955, 960 [202 Cal.Rptr. 499], citations omitted.) "Whether the rule is to be applied is largely a question of an appellate court's discretion." (*Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].)

In this case there is no significant difference between "delayed discovery" and "fraudulent concealment," the theory on which Sylve purportedly proceeded below and which she again raises on appeal. Whatever the label, Sylve's theory is that her cause of action did not accrue until the failure of the Rileys' son and daughter-in-law to occupy the premises revealed that she had been wrongfully evicted based on a false statement of reasons in the 30-day notice.

The rent ordinance states that in order for a landlord to recover possession of a rental unit for use by a relative the relative must occupy the premises "for a period of at least 12 continuous months." (S.F. Admin. Code, § 37.9, subd. (a)(8).) It is silent as to how soon after eviction the landlord's relative must move in. It does not say how long the landlord has for renovation and/or repair after the tenant moves out.[2] Thus, there are triable issues of fact as to when, if ever, the appearance of vacancy constituted inquiry notice of the Rileys' lack of intent to move their son into the premises, and what, if any, further investigation was reasonable under the circumstances.

The problem this case presents, moreover, is inherent in the ordinance's language or lack thereof: Absent a visible "for rent" sign or evidence someone other than the landlord's designated relative is in residence, when and how is any tenant evicted under San Francisco Administrative Code section 37.9, subdivision (a)(8) put on inquiry notice that she may have a cause of action for wrongful eviction? How long may a landlord relying on this subdivision leave a unit unoccupied before the relative takes possession? How much time does such a landlord have to complete repairs or renovation before the relative moves in?[3] Absent more precise time limits, there will always be a factual dispute as to when the statute of limitations begins to run. This is not fair to either the landlord or the former tenant. Both parties would be better served if San Francisco amended its ordinance to require the designated relative to occupy the premises within a specified period after the tenant vacates the premises. An extension could be granted for repairs or renovation.

The Rileys cite *Dept. of Social Welfare* v. *Stauffer* (1943) 56 Cal.App.2d 699, 704 [133 P.2d 692], for the proposition that the delayed discovery rule is not applicable to Code of Civil Procedure section 340, subdivision (1). They have inexplicably omitted from their discussion of that case, and replaced by an ellipsis in a lengthy quotation therefrom, the repeatedly expressed qualification, "[i]n the absence of allegations of fraud," which clearly distinguishes it from the case at hand.

Since we hold the trial court erred in granting summary judgment because there is a triable issue of fact as to the tolling of the one-year statute of

---

[2] In a response to Sylve's interrogatories dated September 20, 1991, the Rileys claimed their son was inhabiting the premises part-time while repairs were being made.

[3] Section 37.9, subdivision (a)(11), of the rent ordinance provides a landlord may evict a tenant in order to "carry out capital improvements or rehabilitation work" for which "all the necessary permits" have already been obtained, in which case the tenant retains a "right to reoccupy." Subdivision (a)(12) of section 37.9 allows eviction in order to carry out "substantial rehabilitation" for which all necessary permits have been obtained. The Rileys cited neither of these subdivisions in the 30-day notice they sent Sylve.

limitations (Code Civ. Proc., § 340, subd. (1)), we need not consider Sylve's contention that there are also common law causes of action for damages for eviction in violation of the rent ordinance, subject only to a three-year statute of limitations (Code Civ. Proc., § 338, subds. (a), (d)).

The judgment is reversed and remanded for further proceedings. Sylve shall recover her costs on appeal.

Peterson, P. J., and Haning, J., concurred.