Filed 11/13/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JKC3H8 et al., | |
| Plaintiffs and Respondents, | C071010 |
| v. | (Super. Ct. No. 39201100270436CUORSTK) |
| JAMES COLTON et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Roger Ross, Judge. Vacated as moot.

ROBINSON BRADFORD, Marc B. Robinson and Matthew C. Bradford for Defendants and Appellants.

LAW OFFICES OF BRUNN & FLYNN, Gerald E. Brunn and Mahanver S. Sahota for Plaintiffs and Respondents.

Factually, this case involves a dispute between neighbors over the use of a road and certain alleged threats, harassment, and interference with property rights arising out

of this dispute.  Legally, it involves the following issue:  Where a plaintiff who has filed a complaint containing causes of action that are based, in part, on protected conduct — and therefore potentially subject to a special motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] — subsequently files an amended complaint removing the allegations of protected conduct as a basis for liability, does the filing of the amended complaint render moot a later-filed anti-SLAPP motion based on the original complaint?  We conclude that it does.

## BACKGROUND

JKC3H8, a Nevada Limited Partnership, and Jillian Knudsen (plaintiffs) sued James and Maureen Colton (defendants) seeking an injunction and damages arising out of a dispute over the use of an unpaved road in Ripon, California.  Knudsen lived with her husband, John Kamps, and two daughters in a house located between State Highway 120 and Louise Avenue.  The property was owned by JKC3H8 (the partnership), the general partner of which was Kamps.  The Coltons also lived between Highway 120 and Louise Avenue, a short distance to the north of Knudsen and Kamps.  The road at the center of this dispute, known as Huse Road, connects Highway 120 to Louise Avenue.

### *The Original Complaint*

The original complaint, filed October 3, 2011, alleged:   "Plaintiffs, their family, business and guest invitees use Huse Road for ingress and egress from Louise [Avenue] to their property.  Plaintiffs, their family, and business invitees pass Defendants' residence when they travel from Louise Avenue, south on Huse Road, to their residence. . . .  [¶] . . . [¶]  . . . Plaintiffs allege that each parcel along Huse Road from State Highway 120 to Louise Avenue extends approximately fifteen (15) feet to the middle of Huse Road.  Defendants' land is burdened by the right of way easement over the easterly

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for "strategic lawsuit against public participation."

fifteen feet of their property." The complaint continued: "Since April 2009, Defendants have harassed, intimidated and annoyed [Knudsen], her family and guest invitees regarding the use of Huse Road. Defendants have engaged in a malicious and premeditated campaign to prevent and destroy [Knudsen's] quiet peace and enjoyment of her home. Among other things, Defendants have trespassed on [Knudsen's] property, threatened to harm her daughters and animals, caused damage to crops from their excessive speeding on Huse Road, intentionally destroyed speed bumps on Huse Road, *made false and defamatory statements regarding* [*Knudsen*], and brandished a rifle at [Kamps]." (Italics added.)

With respect to speeding and destruction of speed bumps, the complaint alleged: "Defendants consistently drive down Huse Road at an excessive rate of speed. The dirt road was not constructed for speeds in excess of fifteen (15) miles per hour. Defendants' speeding puts an undue burden on the road and causes crop damage by the dust and spider mites that infest Plaintiffs' orchard and neighboring orchards. [¶] . . . [Knudsen] erected dirt speed bumps on [the partnership's] fifteen feet of Huse Road in front of its property to slow the speed of vehicles passing [Knudsen's] residence and orchard. In response, Defendants vandalized Plaintiffs' property by using their motor vehicles to destroy the speed bumps." With respect to trespassing and harassment, the complaint alleged: "On numerous occasions, [Maureen Colton] has trespassed onto Plaintiffs' property to harass and intimidate Plaintiffs and their invitees. [¶] . . . On June 1, 2011, [James Colton] parked on Huse Road, in front of Plaintiffs' property, to spy on and intimidate [Knudsen], her family and invitees. [¶] . . . *In June 2011,* [*Maureen Colton*] *falsified a petition in support of a temporary restraining order and request for order to stop harassment against* [*Knudsen*]. *A temporary restraining order was granted by San Joaquin County Superior Court; however, a permanent restraining order was denied after hearing on June 28, 2011.* [¶] . . . On June 19, 2011, [James Colton] brandished a

3

rifle at [Kamps], as part of Defendants' campaign of harassment against [Knudsen]. [¶] . . . Over the past year, Defendants have blocked the ingress and egress of Plaintiffs' business and guest invitees from using Huse Road from Louise Avenue to access Plaintiffs' property. [¶] . . . [James Colton] consistently attempts to instigate a physical altercation with his threats of physical harm to [Knudsen], her children, animals and property." (Italics added.) The complaint further alleged: "*As evidenced by [Maureen Colton's] petition for civil harassment restraining order, the nature of Defendants' harassment has become more alarming and their harassment and apparent obsession have become intolerable.*" (Italics added.)

The complaint's first cause of action sought an injunction to prevent "further acts of harassment directed towards [Knudsen], her family and invitees to her residence, including without limitation, making verbal threats and insults directed toward [Knudsen], verbally assaulting [Knudsen], and trespassing on [Knudsen's] property." This cause of action also sought damages for "the loss of the quiet use and enjoyment of [Knudsen's] property, orchards and residence," and for "emotional distress as a result of Defendants' wrongful conduct." The second and third causes of action sought damages for private nuisance and civil harassment, respectively. These causes of action also sought an injunction preventing "[d]efendants from interfering with and encroaching on [Knudsen's] use and enjoyment of the Easement." The fourth cause of action sought damages for intentional infliction of emotional distress. The fifth cause of action sought to quiet title to the easement in the partnership's favor. Finally, the sixth cause of action sought declaratory relief, specifically judicial declarations that "[p]laintiffs have an easement to [use] Huse Road from Louise Avenue to State Highway 120," that "[d]efendants' driving in excess of fifteen (15) miles per hour on the unpaved Huse Road constitutes a nuisance," and that "[p]laintiffs have the right to erect speed bumps on the easterly most portion of their property which extends into Huse Road."

4

## Demurrer to the Original Complaint

On November 7, 2011, defendants filed a demurrer to the original complaint, asserting the first, second, and fourth causes of action failed to state facts sufficient to constitute causes of action. In support of the demurrer, defendants argued the first cause of action should be dismissed because "injunctive relief is a remedy, not a 'cause of action,' " and the claim is also "unclear" because Knudsen "seeks to enforce rights that only belong to the owner of the property who is not her." Defendants argued the second cause of action was "fatally uncertain" because Knudsen did not "specifically identify any particular conduct on the part of the Defendants" within the cause of action, but instead "incorporate[d] by reference every paragraph preceding the cause of action," many of which did not "support a claim that the Defendants interfered with [Knudsen's] 'use and enjoyment' of property." Finally, defendants argued the fourth cause of action "failed to identify sufficiently outrageous conduct" to support a claim of intentional infliction of emotional distress.

## The First Amended Complaint

On December 6, 2011, at 1:56 p.m., plaintiffs filed an amended complaint. The amendment removed reference to the temporary restraining order obtained by Maureen Colton against Knudsen and also removed reference to any defamatory statements made by defendants.

In an attempt to add certainty to the individual causes of action, the following list of allegedly wrongful conduct was added to the first, third, and fourth causes of action: "a. Defendants harassed, intimidated and annoyed [Knudsen], her family and guest invitees regarding use of her property, access to her property, and the use of Huse Road; [¶] b. Defendants blocked the ingress [and egress of Plaintiffs' business and guest invitees from using Huse Road from Louise Avenue to access Plaintiffs' property]. Defendants engaged in a malicious and premeditated campaign to prevent and destroy

5

[Knudsen's] quiet peace and enjoyment of her home; [¶] c. Defendants trespassed on [Knudsen's] property; [¶] d. Defendants threatened to harm [Knudsen's] daughters; [¶] e. Defendants caused damage to crops from their excessive speeding on Huse Road; [¶] f. Defendants intentionally destroyed speed bumps on Huse Road; [¶] g. Defendants brandished a rifle at [Kamps]; [¶] h. On June 1, 2011, [James Colton] parked on Huse Road, in front of Plaintiffs' property, to spy on [Knudsen]; [¶] i. [James Colton] has attempted to instigate physical altercations with [Knudsen]; [¶] j. In April of 2011, [James Colton] nearly hit [Knudsen] with his vehicle. Said act was done intentionally and willfully with the intent to cause [Knudsen] to suffer fear and apprehension, and was done while said Plaintiff was cognizant of said act; [¶] k. Since April of 2011, in the last six months, Defendants have intentionally harassed, vexed, and annoyed Plaintiffs by making excessive noise with their vehicles in front of [Knudsen's] home, by accelerating their vehicles rapidly on soft dirt, causing their tires to emit loud noises. Said acts have been committed at least 30 times, collectively, by [James and Maureen Colton]; and [¶] l. In or about June of 2011, [James Colton] threatened to shoot [Knudsen's] dogs with his shotgun."

Similarly, the following list of allegedly wrongful acts was added to the second cause of action: "a. Harassing, intimidating, and annoying [Knudsen], her family and guest invitees regarding use [of] her property, access to her property, and the use of Huse Road; [¶] b. Trespassing on the Subject Property; [¶] c. Threatening to harm [Knudsen's] daughters and animals; [¶] d. Damaging [Knudsen's] crops from their excessive speeding on Huse Road; and [¶] e. Intentionally destroying speed bumps on Huse Road."

### The Anti-SLAPP Motion

The same day, at 3:24 p.m., defendants filed an anti-SLAPP motion seeking to strike the first through fifth causes of action, relying on the aforementioned references to

6

the temporary restraining order obtained by Maureen Colton against Knudsen contained in the original complaint. Defendants also relied on deposition testimony from Knudsen and Kamps in which they agreed with defendants' counsel that the restraining order was "one of the reasons" or "part of the reason" for filing the current lawsuit against the Coltons. Based on the original complaint and these deposition responses, defendants argued the first prong of the anti-SLAPP analysis was satisfied: "Clearly, Defendants have met their burden of proof and established that all of Plaintiffs' claims arise out of and are based upon Defendants' constitutionally protected right to seek a temporary restraining order." Turning to the second prong, defendants argued plaintiffs would be unable to prevail on the merits of these causes of action. Finally, defendants claimed entitlement to attorney fees should they prevail on the motion.

### Ruling on the Demurrer

On December 7, 2011, after issuing a tentative ruling on the demurrer and holding a hearing, the trial court ruled the filing of the first amended complaint rendered the demurrer moot.

### Subsequent Anti-SLAPP Pleadings

Following the trial court's ruling on the demurrer, the parties stipulated to continue the hearing on the anti-SLAPP motion until April 2012.

On March 21, 2012, plaintiffs filed an opposition to the anti-SLAPP motion. Relying on *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, plaintiffs argued the challenged causes of action did not arise from protected activity because the references to the temporary restraining order in the original complaint were incidental to, and did not form the basis for, these causes of action. Plaintiffs also argued the deposition testimony did not support defendants' anti-SLAPP motion because both Knudsen and Kamps stated the lawsuit was filed because of the totality of the circumstances surrounding the dispute over Huse Road, including threats and harassment,

7

and not simply because Maureen Colton obtained a temporary restraining order against Knudsen. Plaintiffs further argued they would likely prevail on the merits of their causes of action. In support of this argument, plaintiffs submitted Knudsen's deposition testimony, in which she stated defendants damaged her crops, destroyed speed bumps on Huse Road, trespassed on her property, called her names, and loitered in front of her house. Plaintiffs also submitted Kamps's deposition testimony, in which he stated defendants drove erratically and at an excessive rate of speed down Huse Road, James Colton let his dogs loose on one occasion to chase after Kamps and his dogs, and James Colton pointed a shotgun at Kamps on another occasion. Finally, plaintiffs argued in their opposition that defendants should be required to pay their attorney fees for filing a frivolous anti-SLAPP motion.

On March 27, 2012, defendants filed a reply to the opposition. Defendants first pointed out plaintiffs did not dispute that Maureen Colton's act of seeking a temporary restraining order is a protected activity within the meaning of the anti-SLAPP statute. Then, relying on *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, defendants argued this protected activity was not incidental to the challenged causes of action because, while not the only basis for liability, it was alleged in the original complaint, and asserted in Knudsen's and Kamps's deposition testimony, as "a basis for liability." Defendants also argued plaintiffs did not offer evidence in support of their likelihood of prevailing on the merits and disputed plaintiffs' entitlement to attorney fees.

### *Ruling on the Anti-SLAPP Motion*

Hearing on the anti-SLAPP motion was held on April 4, 2012. After entertaining argument on the motion, the trial court ruled defendants had not satisfied either prong of the anti-SLAPP analysis. With respect to whether the challenged causes of action arose from protected activity, the trial court explained: "It is the principal thrust of the cause of action that determines whether the anti-SLAPP statute applies. [Citation.] The anti-

SLAPP statute does not protect speech that is not protected by the First Amendment. [¶] [Plaintiffs'] lawsuit is based on a legitimate dispute with regard to alleged unprotected activity on the part of [defendants], wholly-unrelated to [defendants'] First Amendment rights." With respect to whether plaintiffs had shown a likelihood of prevailing on the merits, the trial court explained: "[Plaintiffs] satisfied their burden by citing the transcript of the deposition of [Knudsen]. The facts shown include activities of the defendants, including verbal threats, threatening plaintiff with attacks by defendants' dogs, and loading and pointing a shotgun at plaintiff in a threatening manner, from a distance of fifteen feet." The trial court denied plaintiffs' request for attorney fees, explaining at the hearing that the motion was not frivolous.

Defendants appeal. As we explain, because the anti-SLAPP motion was rendered moot by the filing of the first amended complaint, we shall vacate the trial court's order denying the motion.

DISCUSSION

I

*The Anti-SLAPP Statute*

Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or

9

writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).)

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Our review of an order denying an anti-SLAPP motion is de novo. (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1447.)

## II

### *Filing of the First Amended Complaint Rendered the Anti-SLAPP Motion Moot*

Plaintiffs argue, for the first time on appeal, that we should affirm the trial court's order denying the anti-SLAPP motion because the first amended complaint, filed before defendants filed the anti-SLAPP motion, superseded the original complaint and does not contain any references to Maureen Colton's action of obtaining a temporary restraining order. The anti-SLAPP motion, argue plaintiffs, "is accordingly moot." We agree the anti-SLAPP motion was rendered moot by the filing of the first amended complaint, but disagree the appropriate remedy is to affirm the order denying the motion.

We first address whether plaintiffs' argument is properly before us. Raising such an argument for the first time on appeal presents a potential "theory of trial" problem.

10

"Where the parties try the case on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 407, p. 466; see *Jones v. Dutra Construction Co.* (1997) 57 Cal.App.4th 871, 876-877 [where the parties litigated the defendant's summary judgment motion with no suggestion the that defendant's reliance on a certain federal statute precluding the plaintiff's liability was not properly raised in the defendant's answer, "by so litigating the merits of the summary judgment motion, [the plaintiff] waived any right to claim on appeal that the answer was defective"].)

Here, plaintiffs litigated the anti-SLAPP motion on the merits without asserting that the filing of the first amended complaint rendered the motion moot. Nevertheless, application of the theory-of-trial doctrine "is discretionary with the reviewing court, and several loose exceptions have been recognized," one of which is directly applicable here: "[a] change in theory may be permitted where the issue is one of law alone." (9 Witkin, Cal. Procedure, *supra*, § 414, p. 472.) There is no factual dispute over whether the first amended complaint was filed before the anti-SLAPP motion. It was. The only question is whether the first amended complaint superseded the original complaint and rendered the anti-SLAPP motion moot. This is a pure question of law. We may therefore address the merits of this contention.

" ' "[A]n amendatory pleading supersedes the original one, which ceases to perform any function as a pleading." ' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) "The amended complaint furnishes the sole basis for the cause of action, and the original complaint ceases to have any effect either as a pleading or as a basis for judgment. [Citation.] [¶] Because there is but one complaint in a civil action [citation], the filing of an amended complaint moots a motion directed to a prior

11

complaint. [Citation.]" (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130-1131.) Thus, the filing of an amended complaint renders moot a demurrer to the original complaint. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1054.) Similarly, "once an amended complaint is filed, it is error to grant summary adjudication on a cause of action contained in a previous complaint. [Citation.] . . . ' . . . After a cause of action is amended, the court may rule in favor of the defendant if, *upon subsequent motion, or perhaps renewal of the earlier motion if appropriately framed*, it is shown . . . there are no triable material issues of fact which would permit recovery on that theory.' [Citation.]" (*State Compensation*, *supra*, 184 Cal.App.4th at p. 1131.)

So too does an amended complaint render moot an anti-SLAPP motion directed to a prior complaint, with the following caveat: a plaintiff or cross-complainant may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint or cross-complaint in response to the motion. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1280, 1293-1294 (*Salma*); see also *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 (*Simmons*).)

In *Simmons*, *supra*, 92 Cal.App.4th 1068, the trial court granted an anti-SLAPP motion directed to a cross-complaint and denied the cross-complainant leave to amend. (*Id*. at p. 1072.) We affirmed. With respect to the trial court's decision to deny leave to amend, we explained: "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for

12

leave to amend. [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his [or her] goal of delay and distraction and running up the costs of his [or her] opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. [Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (*Id.* at pp. 1073-1074.)

In *Salma*, *supra*, 161 Cal.App.4th 1275, the Court of Appeal reached the same conclusion with respect to a cross-complaint that was amended after the anti-SLAPP motion was filed, but before the trial court ruled on the motion. The court explained: "*Simmons* supports automatic dismissal of the amended claims. Requiring the trial court to analyze the amended claims under section 425.16 simply because the claims were amended before the court ruled on the first motion to strike would cause all of the evils identified in *Simmons* and would undermine the legislative policy of early evaluation and expeditious resolution of claims arising from protected activity." (*Id.* at p. 1294; see also *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1055-1056; *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 666-667.)

The foregoing cases are inapplicable here because plaintiffs cannot be said to have amended the complaint to subvert or avoid a ruling on an anti-SLAPP motion that had not been filed at the time the amendment was made. We acknowledge the anti-SLAPP motion was filed less than two hours after the first amended complaint was filed, but this does not change the fact there was no pending anti-SLAPP motion at the time of the amendment. Accordingly, the anti-SLAPP motion in this case, directed to a superseded complaint, was moot from the start. Nor do we believe this conclusion frustrates the purposes of the anti-SLAPP statute. In this case, any allegations of protected activity

13

were removed from the lawsuit *before* the anti-SLAPP motion was filed.  Thus, at the time the motion was filed, there were no causes of action arising from protected activity to strike.

## DISPOSITION

The trial court's order denying the anti-SLAPP motion (Code Civ. Proc., § 425.16) is vacated as moot.  Costs on appeal are awarded to plaintiffs.  (Cal. Rules of Court, rule 8.278(a).)


       HOCH    , J.


We concur:


     HULL     , Acting P. J.


     BUTZ    , J.