Filed 11/12/14  Shkolnik v. CitiMortgage CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN SHKOLNIK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITIMORTGAGE, INC., et al.,<br><br>    Defendants and Respondents. | B246824<br><br>(Los Angeles County<br> Super. Ct. No. LC094606) |

APPEAL from an order of dismissal of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed.

Law Offices of George S. Wass and George S. Wass for Plaintiff and Appellant.

Wolfe & Wyman, Cathy L. Granger and Constance S. Trinh for Defendants and Respondents.

_____

## INTRODUCTION

The defendants filed a demurrer to the plaintiff's second amended complaint for claims relating to the foreclosure of his home. The self-represented plaintiff filed opposition as well as a motion for leave to file an amended complaint and proposed third amended complaint in which he alleged new causes of action. On the date set for hearing on the demurrer and motion for leave to file the amended complaint, the trial court told the defendants they could file a response to the plaintiff's motion for leave to amend and then the matter would be taken under submission. Citing the interests of judicial economy, the trial court issued its ruling in which it granted the plaintiff's motion for leave to file an amended complaint; deemed the third amended complaint filed as of the week before; deemed the demurrer to the second amended complaint and opposition to the motion for leave to amend to be a demurrer to the third amended complaint; and— without ever affording the plaintiff the opportunity to respond to this purported demurrer in any manner whatsoever—sustained this so-called demurrer to the third amended complaint without leave to amend.

The plaintiff appeals from the order of dismissal subsequently entered. Because we agree that the trial court violated the plaintiff's right to due process in proceeding as it did, we reverse.

## FACTUAL AND PROCEDURAL SUMMARY

*Prior Pleadings and Proceedings.*

On August 18, 2011, Steven Shkolnik (appearing in propria persona) filed his original complaint against CitiMortgage, Inc., CR Title Services, Inc., Vericrest Financial, Inc. and LSF7 Bermuda NPLI Trust for violations of the Truth in Lending Act (TILA; 15 U.S.C. § 1601 et seq.), violations of the Real Estate Settlement Procedures Act of 1974 (RESPA; 12 U.S.C. § 2601 et seq.), wrongful foreclosure (Civ. Code, §§ 2923.5,

2

2924, 2924a) and related claims.[1]  According to Shkolnik's complaint, the named defendants engaged in deceptive practices in connection with foreclosure proceedings involving his property located at 5069 Escobedo Drive in Woodland Hills, failed to comply with applicable rules and regulations and illegally sold Shkolnik's residence.

Citing Shkolnik's claims the defendants had violated federal law, CitiMortgage and CR Title Services filed a petition for removal to federal court.  Thereafter, on October 31, 2011, Shkolnik filed a first amended complaint (in federal court) against CitiMortgage, CR Title Services and Lisa Markham, identified as "Assistant Vice President of CitiMortgage" (collectively the CitiMortgage defendants), but did not include Vericrest Financial or LSF7 Bermuda NPLI Trust.[2]  Shkolnik added allegations the CitiMortgage defendants told him on September 16, 2010, they were going to sell his loan to another lender (Vericrest Financial) and the new lender would work out a solution that would be comfortable for Shkolnik as he was experiencing a financial hardship; Shkolnik in turn notified Vericrest Financial he sought a loan modification or extension consistent with Civil Code sections 2923.5, subdivision (a)(2), and 2923.6; and that "due diligent efforts to work out a good faith and reasonable modification plan due to his hardship" were mandatory under the new law.  Shkolnik also added allegations the CitiMortgage defendants did not loan him "lawful money" within the meaning of the

---

[1]    Shkolnik is represented by counsel in this appeal but represented himself throughout the proceedings in the trial court.

Vericrest Financial Inc. and LSF7 Bermuda NPLI Trust are not parties to this appeal, but we address their involvement in the proceedings where it is relevant.

[2]    In his first amended complaint, Shkolnik alleged the following causes of action: (1) breach of contract and implied covenant of good faith and fair dealing; (2) fraud and misrepresentation; (3) usury and misrepresentation; (4) violation of Civil Code section 2923.5; (5) violation of Civil Code section 2923.6; (6) violations of Business and Professions Code section 17200; (7) unfair debt collection practices; (8) wrongful foreclosure; and (9) intentional infliction of emotional distress.

3

United States Constitution as loan proceeds were "mere book entries" not backed by or "redeemable in gold or silver coins."

On December 1, 2011, noting the CitiMortgage defendants' petition for removal was defective for failure to notify Vericrest Financial, Inc. and LSF7 Bermuda NPLI Trust of the petition and Vericrest Financial and LSF7 Bermuda did not consent to removal, the federal district court remanded the action back to the trial court. In its ruling, the district court observed that, in amending his complaint to eliminate the "non-consenting defendants," Shkolnik seemed to have anticipated the court would remand the matter as to these defendants only.[3]

The CitiMortgage defendants filed a demurrer to the first amended complaint (filed in federal court), arguing Shkolnik's claims based on the "vapor money" theory should be dismissed and failed to state any of his causes of action.[4] In the meantime, Shkolnik had filed a "request for leave to file a[nother] first amended complaint" (in the trial court), explaining he had understood his case against Vericrest Financial and LSF7 Bermuda NPLI Trust would proceed in state court when the CitiMortgage petition for

_____

[3]    In the meantime, Shkolnik had filed a "motion requesting special order" indicating he had filed proofs of service on Vericrest Financial and LSF7 Bermuda NPLI Trust and had made several attempts to file a request for entry of default against these defendants without success because of the petition for removal. (He said these defendants had requested an extension of time to respond, but he had denied the request; he said he had served all of the defendants at the same time and believed they had colluded in seeking the removal as to some but not all defendants as a "delay tactic" and to allow the latter two to be "swept under the carpet.")

[4]    The "vapor money theory typically relies upon the convoluted and nonsensical argument that a plaintiff does not owe the money advanced by the lender on his loan because the indebtedness was not funded by the lender with actual money." (*Tonea v. Bank of America, N.A.* (N.D.Ga. 2014) 2013 U.S. Dist. LEXIS 186184, *20-*21 []; and see *Miner v. JPMorgan Chase Bank* (N.D.Cal. 2013) 2013 U.S. Dist. LEXIS 36362, *7-*8 [The "vapor money" or "illusory loan" theory of relief has been rejected by courts nationwide as such claims have "no basis in law"].)

4

removal was granted and he needed to be able to proceed against Vericrest Financial and LSF7 Bermuda NPLI Trust as well.

Under these circumstances, at the time set for hearing on the demurrer filed by the CitiMortgage defendants (in February 2012), Shkolnik and defense counsel submitted on the tentative ruling: noting Shkolnik had filed no opposition to the demurrer, the trial court (Hon. Bert Glennon, Jr.) sustained the demurrer with leave to amend "for reasons stated in the moving party's demurrer."

The matter was reassigned to a new trial judge (Hon. Maria Stratton) on March 20, 2012.

In April 2012, Shkolnik filed his second amended complaint against the CitiMortgage defendants as well as Vericrest Financial and LSF7 Bermuda NPLI Trust, alleging twelve causes of action: (1) to set aside trustee's sale of real property; (2) negligent misrepresentation; (3) unfair business practices; (4) quiet title; (5) wrongful foreclosure; (6) negligence; (7) injunctive relief; (8) libel; (9) breach of contract; (10) breach of the implied covenant of good faith and fair dealing; (11) promissory estoppel— breach of oral contract; and (12) declaratory relief.[5]

Shkolnik alleged he had a construction loan with CitiMortgage in August 2007; he developed the property from a downslope home to an upslope home; and the construction loan became a "permanent loan." By January 2010, Shkolnik said, he could no longer afford his monthly mortgage payments and stopped paying. In June, he applied for a loan modification and received a denial letter three months later. A month after that, his loan was transferred to Vericrest Financial. In October, he received another notice stating LSF7 Bermuda NPLI Trust was the new owner of his loan. In November, shortly after

---

[5]    Initially, Shkolnik filed a second "first amended complaint" in late March, but pursuant to the parties' stipulation, Shkolnik's second amended complaint was deemed filed on April 5.

Vericrest Financial took over the loan, with the assistance of a loan modification assistance company (Jack Law Group), Shkolnik entered into a loan modification agreement, and the defendants were forced to rescind foreclosure proceedings. For the next several months, Shkolnik alleged, the process repeated, with Shkolnik continuing to submit additional information regarding his income, his finances and his property as requested.

Then, in December, Shkolnik alleged, his modification packet was denied once again. Upon Veriquest's recommendation, he entered into a different agreement to have the property put into a short sale transaction. "Defendants" informed him that throughout this process any foreclosure or default would be delayed and postponed indefinitely. Before the sale date, Shkolnik was forced to file a Chapter 7 bankruptcy petition, and after the bankruptcy was filed and discharged, (although he had alleged he had entered into a modification agreement), he then alleged he had resubmitted a third loan modification package which was denied once again due to insufficient income to afford payments.

According to Shkolnik's second amended complaint, an eviction notice was posted on his residence on August 8, 2011; one week later, he received a letter from the defendants rescinding the posted eviction notice. Shkolnik then secured low cost legal assistance to oppose the proceedings, but the defendants "refuse[d] to take action and assist in rectifying th[e] wrongful foreclosure" so Shkolnik filed his complaint.

Shkolnik further alleged that when he notified the defendants he had received a notice of trustee's sale, defendants assured him he could disregard the notice and he resubmitted his loan modification packet, but then he was forced to file a Chapter 7 bankruptcy petition. On information and belief, Shkolnik alleged, upon his bankruptcy filing, the foreclosure was put on hold, with no sale date pending, so he did not need to take any action to forestall foreclosure because he had a short sale transaction, as he repeatedly confirmed with defendants. After the defendants recommended a short sale,

Shkolnik was assured the property would not be foreclosed upon and the foreclosure sale had been suspended. According to Shkolnik, the property had appreciated substantially since he acquired it and converted it from an upslope house to a downslope home. According to Shkolnik's allegations, Veriquest Financial and LSF7 Bermuda NPLI Trust, as successful bidder at the trustee's sale, had actual and constructive notice of the irregularities in the sale. The defendants made their representations with the intent to induce Shkolnik not to take action and to deprive him of his property. In justifiable reliance upon the defendants' representations, Shkolnik alleged, he took no action. He believed the representations to be true and did not learn of their falsity until July 29, 2011, when he learned the trustee's sale had already been conducted.

The CitiMortgage defendants filed a demurrer to the second amended complaint on May 3, 2012.[6]

Prior to the July 11, 2012 hearing on the demurrer, Shkolnik filed a document that was both an opposition to the demurrer and a motion for leave to file an amended complaint. At the hearing, the trial court stated, "Mr. Shkolnik, you cannot combine a motion to amend the second amended complaint with the opposition. Those are separate matters. Because of that, the clerk's office is not filing either of them. So I'm going to return them to you so that you can redraft them as separate motions as they should be."[7] The trial court then stated it was not prepared to hear argument on the demurrer and the motion for leave because the court had "been engaged in a rather lengthy court trial." The court ordered Shkolnik to separate and refile his opposition and his motion, and scheduled both for hearing on August 22, 2012.

Shkolnik complied. On July 13, 2012, he filed two documents: an opposition to the demurrer to the second amended complaint and a motion "for leave to amend [the]

---

[6] The CitiMortgage defendants also filed a motion to strike. Vericrest Financial Inc. and LSF7 Bermuda NPLI Trust also filed a demurrer and motion to strike.

[7] This probably explains why this document is not in the record on appeal.

second amended complaint."[8]  On August 9, 2012, the CitiMortgage defendants filed  an opposition to Shkolnik's motion for leave to amend his second amended complaint.  On August 21, 2012, the day before the hearing on the demurrer and the motion for leave to amend, Shkolnik, according to the trial court, "lodged a motion to amend the [second amended complaint] and for leave to file a Third Amended Complaint," although this document is also not in the record on appeal.

At the August 22, 2012 hearing on the CitiMortgage defendants' demurrer to the second amended complaint and Shkolnik's motion for leave to file an amended complaint, the trial court acknowledged receipt of Shkolnik's new motion for leave to file a third amended complaint, gave counsel for the CitiMortgage defendants until September 5, 2012 to file a response, and stated that it would take the matters under submission as of September 5, 2012.

*The Operative* (*Third Amended*) *Complaint.*

In his proposed third amended complaint, Shkolnik asserted 16 causes of action against the CitiMortgage defendants (as well as Vericrest Financial, Inc. and LSF7 Bermuda NPLI Trust):  (1) breach of contract; (2) violation of the Truth in Lending Act; (3) violation of the Real Estate Settlement Procedures Act; (4) violation of the Rosenthal Act; (5) quiet title; (6) wrongful foreclosure; (7) to set aside trustee's sale; (8)

---

[8]     According to Shkolnik's motion for leave to amend, he had just received (on July 10) a "Securitization Analysis Report" prepared by Auditing Services regarding his property.  This report revealed an investment scheme consisting of an originator (CitiMortgage), seller (CitiGroup), a depositor (unknown), trust (Vericrest), trustee (Wells Fargo Bank) and master servicer (Vericrest)—companies involved in the business of securitization investments—who secretly acquire unsuspecting borrowers' signatures on misrepresented loan documents.  Shkolnik said the entire process was never disclosed to him verbally or in the deed of trust/contract but placed a "very serious cloud on the title." Because the report constituted evidence the defendants lacked standing to foreclose on his property, he needed time to review it and amend his second amended complaint. In addition, Shkolnik said, Governor Brown had just signed the California Homeowners Bill of Rights the day before (on July 11) and it "directly affected" his case so he needed time to review the new law as well and amend his complaint accordingly.

cancellation of trustee's deed; (9) slander of title; (10) civil conspiracy; (11) unfair business practices; (12-15) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); and (17) fraud.[9]

Shkolnik alleged he had purchased his property (5069 Escobedo Drive in Woodland Hills) in August 2007, using funds acquired through and secured by a Deed of Trust with CitiMortgage, Inc. as the lender and beneficiary, with terms memorialized in a promissory note. The Deed of Trust was recorded in the Los Angeles County Recorder's Office on August 9, 2007, and the "first and only" assignment of the deed was filed on November 19, 2010—"signed by D.M. Wileman, Vice President for [CitiMortgage], a well-known Robo signer."

On information and belief, Shkolnik further alleged as follows: The CitiMortgage defendants (among others) had "unlawfully moved against [him] with foreclosure proceedings."[10] These defendants engaged in a pattern of unlawful activity in pursuing non-judicial foreclosure, representing they had the right to payment under the note, payment of which was secured by the deed of trust/contract, when in fact they were not in possession of the note and were neither holders of the note nor non-holders of the note entitled to payment as specified in Commercial Code sections 3301, 3302 and 3309, and proceedings to foreclose were without right under the law. Shkolnik alleged the

---

[9]     The CitiMortgage defendants were not named as defendants in connection with the 16th cause of action for constructive trust.

[10]     Shkolnik also named as defendants Vericrest Financial, Inc., and LSF7 Bermuda NPLI Trust. On September 25, 2012, the trial court sustained the demurrer filed by these defendants, and on October 23, 2012, Shkolnik was served with notice of entry of the trial court's order of dismissal as to these same defendants (filed on October 16, 2012). Shkolnik filed his notice of appeal on January 17, 2013. On June 12, 2013, Vericrest Financial, Inc. and LSF7 Bermuda NPLI Trust filed a motion to dismiss Shkolnik's appeal as untimely. On June 28, 2013, this motion was granted, and Shkolnik's appeal as to Vericrest Financial, Inc., and LSF7 Bermuda NPLI Trust was dismissed as untimely. (The order dismissing Shkolnik's appeal as to these parties became final on August 29, 2013.)

defendants misrepresented the facts intending to force him to either pay large sums of money to them to which they were not entitled or to abandon the property to them to their unjust profit.

Shkolnik alleged that when he entered into the Deed of Trust/Contract with CitiMortgage in August 2007, he was led to believe he was signing documents for a loan he would receive when in fact it was a securitization investment contract for an enterprise engaged in the business of securitizing mortgages and racketeering. Through a securitization audit performed on his property (attached as an exhibit to his third amended complaint), Shkolnik alleged, he discovered "the business for his Mortgage Backed Security (hereinafter 'MBS') consisted of a group of entities [CitiMortgage and CR Title Services along with Vericrest Financial and LSF7 Bermuda NPLI Trust] that are grouped together by way of a Pooling and Service Agreement (hereinafter 'PSA') and registered with the Securit[ies and] Exchange Commission (hereinafter 'SEC')." According to his allegations, Shkolnik was never made aware of the securitization of his mortgage so there was "never a meeting of the minds." Shkolnik said he received a copy of the Deed of Trust/Contract but not the alleged promissory note. According to the Deed of Trust/Contract, CitiMortgage is the lender; however, CitiMortgage took Shkolnik's note and placed it in a demand deposit account where funds were credited to the account that funded the alleged loan. Shkolnik believes he is the true creditor; CitiMortgage is the debtor and owes the money to Shkolnik.

According to Shkolnik, CitiMortgage, Vericrest Financial and LSF7 Bermuda NPLI Trust are bound by a Pooling and Service Agreement. He alleged none of them had the right to foreclose on his property due to the securitization process because the promise to pay the note has been materially altered by the conversion to mortgage backed securities (MBS) and stock certificates and is no longer enforceable.

Shkolnik alleged the defendants misrepresented material facts. As a direct result of the defendants' conduct, the "alleged loan" was void and unenforceable as of its

10

inception" so he is entitled to (and demands) rescission. The defendants claiming an adverse interest in the property knew their representations were false and are not entitled to payment or to enforce the note. They failed to properly record and give notice of the substitution of trustee. Even if they did have the right to enforce a security interest (which they did not), Shkolnik alleged, they violated the statutory requirements for nonjudicial foreclosure sales.

According to Shkolnik, the sale by CR Title at the direction of Vericrest Financial was fraudulent due to the following counterfeit and forged signatures: the assignment of deed of trust dated November 19, 2010 bears a forged signature for D.M. Wileman; the substitution of trustee recorded July 22, 2010, and signed by Lisa Markham bears a forged signature from notary Stephanie Abcede; the trustee's deed upon sale recorded by CR Title on August 8, 2011, was signed by Lisa Markham as Assistant Vice President for CR Title but she signed the substitution of trustee as Vice President for CitiMortgage, and discovery would show Markham is a "known robosigner" and someone had used a state seal to commit a crime. The documents may appear valid but are void according to Shkolnik. The defendants disparaged his title by preparing and recording fraudulent documents. The trust had been paid in full according to the Bloomberg report. Shkolnik further alleged the defendants had all conspired to defraud him through their predatory lending practices.

The CitiMortgage defendants filed their response to Shkolnik's motion for leave to file a third amended complaint on the September 5 deadline.

The trial court then issued its ruling on the submitted matters on September 25, 2012. Citing "the interests of judicial economy," the court granted Shkolnik's motion for leave to file his proposed third amended complaint, and deemed the third amended complaint filed as of September 17, 2012. The court then stated it would "consider the demurrers, opposition, replies, and supplemental pleadings filed in connection with the [second amended complaint] and the [third amended complaint]," and would "deem[] the

11

demurrers applicable to the [third amended complaint] . . . ." Having done so, the trial court then sustained the CitiMortgage defendants' demurrer without leave to amend.

Shkolnik then filed a motion for reconsideration, attaching documents regarding the revocation of Stephanie Abcede's notary as of June 7, 2011—a year after she notarized Markham's signature on the substitution of trustee at issue in this case. The CitiMortgage defendants filed opposition. Shkolnik's motion for reconsideration was denied as untimely and for failing to explain in his declaration how any new facts could not have been presented earlier.

Shkolnik appeals.[11]

## DISCUSSION[12]

---

[11] Shkolnik filed his notice of appeal on January 17, 2013, indicating he appealed from the "order entered on . . . 10/18/12." When Shkolnik filed his civil case information she et on March 1, 2013, Shkolnik indicated he appealed from an order dated October 18, 2012, and notice of entry of judgment was served on October 24, 2012. (He also indicated he had filed a motion for reconsideration which had been denied on December 14, 2012.) Along with the case information sheet, Shkolnik submitted (1) the order of dismissal filed on October 16 by Vericrest Financial and LSF7 Bermuda NPLI Trust bearing proof of service on Shkolnik, and (2) the order of dismissal filed on October 17 as to CitiMortgage and CR Title—bearing only proof of service dated October 2 (when CitiMortgage and CR Title submitted its *proposed* order of dismissal). On March 5, 2012, we sent Shkolnik a letter informing him that, based on the dates identified in his case information sheet, it appeared his appeal "may be untimely" and he was directed to show cause within 15 days why an order dismissing his appeal for lack of jurisdiction should not be entered. In his response filed on March 15, Shkolnik noted there was no proof of service of the October 17 order of dismissal as to CitiMortgage and CR Title so his notice of appeal filed within 180 days of entry of that order of dismissal was timely. (Although Shkolnik identified October 24, 2012 as the date "notice of entry" was served in his civil case information sheet, the attached documents establish that October 24, 2012 was the date the notice of entry of the order of dismissal *as to Vericrest Financial and LSF7 Bermuda NPLI Trust* was filed (with proof of service on Shkolnik dated October 23).) Where neither the court nor a party serves the appealing party with notice of entry of judgment (or appealable order, such as an order of dismissal), notice of appeal filed within 180 days of entry of the judgment or order is timely. (Cal. Rules of Court, rule 8.104(a)(1)(C).) Accordingly, as Shkolnik established the timeliness of his appeal as to CitiMortgage and CR Title, the order to show cause issued on March 5 was discharged, and we proceed to the merits of Shkolnik's appeal.

12

**Shkolnik Is Entitled to Reversal Because the Trial Court Violated His Due Process Rights.**

The trial court should not have "deemed" the demurrer to the second amended complaint "applicable" to the third amended complaint, and then sustained the demurrer without leave to amend. "[T]he filing of an amended complaint renders moot a demurrer to the original complaint." (*JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468, 477.) This is because "an amended complaint supersedes all prior complaints," and "the filing of an amended complaint moots a motion directed to a prior complaint." (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130-1131.) Therefore, when the trial court granted Shkolnik's motion for leave to file the third amended complaint, the trial court should have taken the demurrer to the second amended complaint off calendar. (See *People ex rel Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 506 ["[w]hen [the plaintiff] filed the amended complaint, the hearing on the demurrer should have been taken off calendar"].) In the summary judgment context, "'once an amended complaint is filed, it is error to grant summary adjudication on a cause of action contained in a previous complaint.'" (*JKC3H8*, *supra*, at p. 477; see *State Compensation Ins. Fund*, *supra*, at pp. 1130-1131 [same].) The error is no different on demurrer.

Instead of taking the demurrer off calendar, the trial court, under the rubric of "the interests of judicial economy," treated the demurrer to the second amended complaint as a demurrer to the third amended complaint, and then, without allowing the parties the opportunity to brief and argue the merits of the demurrer, sustained the demurrer without leave to amend. The trial court did so without requiring the CitiMortgage defendants to

---

12     In his opening brief, Shkolnik concedes he has failed to state his first through fourth causes of action and has abandoned any argument that, if granted leave to amend, he could properly state any of these claims.

We also note that in an order dated October 25, 2013, Shkolnik was informed this court would not consider documents improperly attached to his opening brief.

13

file a demurrer directed to the new claims and allegations in the third amended complaint, and without giving Shkolnik the opportunity to defend his new claims and allegations. While the former may be permissible in some circumstances, the latter is not. Thus, the trial court may have had discretion to treat the CitiMortgage defendants' demurrer to the second amended complaint as a demurrer to the third amended complaint, if the CitiMortgage defendants did not object. But the trial court should have given Shkolnik an opportunity to argue that his new allegations stated claims. At a minimum, Shkolnik should have had the opportunity to argue that, because the CitiMortgage defendants' demurrer was directed to allegations in a superseded pleading and did not address all of the allegations and causes of action in the operative pleading, the trial court should overrule the demurrer. (See *Ellena v. Department of Insurance* (2014) 230 Cal.App.4th 198, 217 ["'[a] demurrer does not lie to a portion of a cause of action'"].)

We recognize there may be situations where it is appropriate for the trial court to deem a demurrer to a superseded complaint a demurrer to a subsequent, operative complaint, and then proceed to rule on the demurrer. For example, if the newer, operative complaint contained identical or even substantially similar allegations and causes of action, or if the newer, operative complaint did not expand or change the scope of the issues in the superseded complaint, then a trial court might properly deem a demurrer to the superseded complaint a demurrer to the operative complaint. That, however, was not the case here. According to the CitiMortgage defendants, Shkolnik's third amended complaint was based on "new allegations," "proposed new claims," and alleged "an entirely different set of contentions," including new allegations "that the foreclosure sale is invalid as a result of the securitization of [his] loan."

The third amended complaint also asserted at least eight new causes of action that Shkolnik did not include in the second amended complaint, including causes of action for cancellation of trustee's deed, slander of title, RICO violations and fraud, and added allegations the defendants were all co-conspirators in their scheme to defraud him. Shkolnik never had the opportunity in the trial court to argue that his causes of action

14

stated claims, or that, in response to a demurrer or a trial court tentative ruling, he could amend his allegations to state these claims. The CitiMortgage defendants had an opportunity to address the merits of Shkolnik's new claims and argue that his allegations were insufficient when the trial court gave them permission to file an opposition to Shkolnik's motion for leave to amend. In their opposition, the CitiMortgage defendants addressed each cause of action in the third amended complaint, and argued that the court should deny the motion for leave because "the proposed amendments fail as a matter of law" and therefore granting leave to amend "would be futile." The trial court, however, did not give Shkolnik the corresponding opportunity to argue that his allegations were sufficient.

Indeed, one of the reasons the trial court sustained the CitiMortgage defendants' demurrer to Shkolnik's fraud cause of action[13] in particular was that it "has been added anew; it was not contained in the [second amended complaint]" and "is derived on factual allegations not a part of the prior complaints. . . . Therefore it has been improperly added to the action."

The court, however, had just given Shkolnik permission to add the fraud cause of action by granting Shkolnik's motion for leave to file the third amended complaint that included this cause of action. Thus, this basis for sustaining the demurrer without leave to amend was erroneous. The trial court's other reason for sustaining the demurrer was that Shkolnik had not alleged fraud with sufficient particularity by alleging "the date, time[,] place, specific perpetrator, and nature of the misrepresentations . . . ." Such a lack of specificity, however, is easily cured by amendment, and courts generally give a plaintiff leave to amend after the first pleading challenge. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["[i]f the plaintiff has not had an opportunity

---

**13**     As noted, of course, the CitiMortgage defendants had not actually demurred to Shkolnik's fraud cause of action because it had not appeared in the second amended complaint. Consequently, the trial court's ruling may more accurately be described as a dismissal of the claim on the court's own motion without giving Shkolnik an opportunity to respond.

to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment"]; *Align Technology, Inc. v. Bao Tran* (2009) ["'[l]iberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given'"].)

Shkolnik was deprived of the opportunity to file anything at all in response to a demurrer the trial court sustained without leave to amend. That is a due process violation. The CitiMortgage defendants argue that because Shkolnik "was present for the hearing when the trial court set this briefing schedule, he cannot argue that he was not on notice." Because there is no transcript of the August 22, 2012 hearing, there is no way to determine whether Shkolnik objected or not. Even assuming the trial court had announced an abbreviated briefing schedule on the motion for leave to amend (that did not allow Shkolnik to file a reply brief), it would have been difficult even for (in Shkolnik's words) a "licensed, seasoned practicing attorney" to anticipate that the court was contemplating a briefing schedule for the demurrer that allowed for no briefing whatsoever, let alone for a self-represented litigant, whose understanding of procedural rules is more limited than attorney's, to make such an objection on the spot. Notwithstanding the general principle that the rules of civil procedure apply equally to a represented and a self-represented litigant (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985), as a practical matter a self-represented litigant's understanding of procedural rules is more limited than an experienced attorney's. Whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives litigants of a hearing. (See *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 473, fn. 5 ["self-represented litigants should . . . be assured of the protection of their rights to access the courts and present their claims"]; cf. *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 432 ["we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits"].)

In *Medix Ambulance Serv. v. Superior Court* (2002) 97 Cal.App.4th 109 (*Medix*), both sides were represented by counsel and had the opportunity to file pleadings in

16

connection with defendant's demurrer, but the trial court issued its ruling overruling the demurrer via the Internet without allowing the parties to present oral argument. The *Medix* court determined the trial court had erred in denying the parties the opportunity to argue the matter in court because a ruling on a demurrer involves a "critical pretrial matter" and the parties' dispute on issues raised is undoubtedly "real and genuine." (*Id.* at p. 115.) The *Medix* court observed that, under the requirements of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) and the directives of the Standards of Judicial Administration, "the demands made on busy trial judges approach, if they do not already exceed, the unrealistic." (*Id.* at p. 111.) "It is thus no surprise that, in their need for efficiency, trial judges have adopted procedures to streamline litigation. Most of these procedures have beneficial effects, causing disputes to be resolved more quickly and more efficiently without sacrificing the ultimate goal of the judicial process: the delivery of just results. But, in adopting these new, efficient procedures, judges must remember another, equally important goal: preserving a process that not only is just, but also appears to be just. In spite of the need for efficiency, courts should not lose sight of the need that parties be given their 'day in court.'

"The concept of parties being given their day in court has real as well as symbolic meanings. It is much preferred that parties, or more likely their lawyers, be given an opportunity to address the court in person so as to assure themselves that the facts and ideas sought to be communicated have, in fact, been communicated. In this case the parties were not given such an assurance; the ruling on their demurrer was delivered to them very cryptically on the Internet the day before they expected to appear in court. The Internet is a useful tool and serves many purposes; but it is no substitute for judge and lawyer being able to interact in person." (*Medix, supra,* 97 Cal.App.4th at p. 111; and see *Cal-American Income Property Fund VII v. Brown Dev. Corp.* (1982) 138 Cal.App.3d 268, 273 ["The quality and appearance of justice is always improved when a judge listens before he or she decides"].)

17

Here, not only was Shkolnik deprived of the opportunity to present oral argument, but he was deprived of the opportunity to respond in any manner whatsoever to the demurrer to his proposed third amended complaint—a demurrer that was never actually filed, let alone set for hearing. We cannot conclude the violation of Shkolnik's due process rights was harmless because he had the opportunity to brief the issues in this court. It is true that we can examine the allegations of the third amended complaint and determine whether they state causes of action. (See *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506 ["[w]hen reviewing a court's dismissal of a lawsuit following an order sustaining a demurrer without leave to amend, we initially review the complaint de novo to determine whether, as a matter of law, the complaint alleges a valid cause of action"].) Nevertheless, the grant or denial of leave to amend is a matter of discretion for the trial court (*id*. at p. 507), and it is hard to determine whether there has been an abuse of discretion before the plaintiff has been given notice of the claimed defects in the complaint, has had an opportunity to respond to those claimed defects, and has proposed amendments to cure those defects. (See *Eldridge v. Tymshare, Inc.* (1986) 186 Cal.App.3d 767, 778-779 [order sustaining demurrer without leave to amend reversed where the plaintiff did not have the opportunity to amend to cure the defect identified on appeal]; see also *Camsi IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1539 [while plaintiff must show how he can amend his complaint to state a cause of action, "this rule should be relaxed where the plaintiff has had no previous opportunity to propose an amendment"]).

The CitiMortgage defendants may not have demurred to all of the new causes of action in the third amended complaint. Moreover, the trial court, had it heard from Shkolnik about his new theories and claims, may not have sustained the next demurrer without leave to amend. Notwithstanding his cursory treatment of the defendants' alleged misrepresentations in his third amended complaint, Shkolnik argued in his "motion for leave to amend second amended complaint based on new evidence just received and the California Homeowners['] Bill of Rights" that he was a "victim of the

18

dual track system" and said his short sale had been approved and was moving forward when the defendants (who he alleged had all conspired together to defraud him) foreclosed "behind [his] back." According to the declaration Shkolnik filed in support of his request to file his second amended complaint, he said he had engaged The Jack Law Group, a company specializing in loan modifications, to submit his loan modification package to Vericrest Financial, but when the loan modification was denied, at Vericrest Financial's request, he agreed to do a short sale instead. Their realtor was brought in, he signed a listing agreement with broker Priscilla Mendoza, the property was listed for sale and an offer had been submitted. "In spite of the short sale being in progress[,] the bank went ahead and foreclosed behind my back without any notice, warning or reason given."[14] (See e.g., *Lueras, supra,* 221 Cal.App.4th at pp. 68-69, 83 ["a lender does owe a duty to a borrower not to make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale" and "[i]t is foreseeable that a borrower might be harmed by an inaccurate or untimely communication about a foreclosure sale or about the status of a loan modification application, and the connection between the misrepresentation and the injury suffered could be very close"; leave to amend should have been granted to allege causes of action for negligent misrepresentation and unfair business practices]; *Alvarez, supra,* 228 Cal.App.4th at pp. 950-951 [the Homeowners' Bill of Rights (HBOR)"attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application"; "[a]lthough the provisions of the HBOR had not yet become effective at the dates relevant to the present action, the legislation nonetheless 'sets forth policy

---

[14] Shkolnik said the "sudden and unexpected foreclosure" on July 31, 2011, caused him unimaginable hardship as his tenant stopped paying rent and he counted on those funds to survive. In later seeking reconsideration of the trial court's ruling, Shkolnik reiterated: "[T]hey lied to me. They told me I could do a short sale; and behind my back, they . . . foreclosed on me."

considerations that should affect the assessment whether a duty of care was owed to [plaintiffs] at that time'"].)

Something Shkolnik wrote in an opposition or argued at hearing may have convinced the court to give him leave to amend on his new causes of action, rather than sustaining a demurrer to those claims without leave to amend at the first challenge.[15] Particularly where the defect in a pleading is technical, such as the lack of specificity in pleading fraud, the opportunity to brief the issues on appeal is no substitute for the opportunity to supply the requisite factual allegations. At this point, "[i]t is premature to conclude that [Shkolnik is] unable to allege facts sufficient to state a viable cause of action based on fraud or misrepresentation." (*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 308.)

Although Shkolnik's ability to plead facts sufficient to constitute causes of action may have been statistically unlikely, and his chances of success on the third amended complaint may have been low, procedural due process is not a matter of probability and statistics. And, on this record, we cannot excuse the procedural due process violation on the ground that the trial court probably would have ruled the same way even if it had given Shkolnik his day on court on the third amended complaint. (See *Mitchell v. W. T. Grant Co.* (1974) 416 U.S. 600, 634 [94 S.Ct. 1895, 40 L.Ed.2d 406], conc. opn. of

---

[15]    We recognize that Shkolnik had included a fraud cause of action in his first amended complaint. Because of the error he had made in eliminating Vericrest Financial, Inc. and LSF7 Bermuda NPLI Trust as defendants in that complaint because he misunderstood the impact of the CitiMortgage defendants' petition for removal (and as he apparently conceded the "vapor money" allegations were unavailing), instead of filing opposition to the CitiMortgage defendants' demurrer to that first complaint, he filed a motion for leave to file an amended complaint to include all of the originally named defendants. Under these circumstances, the demurrer to the first amended complaint was sustained "for the reasons stated in the moving party's demurrer" and Shkolnik was granted leave to amend as he had requested. As the lengthy procedural summary reveals, however, notwithstanding the multiple iterations of Skholnik's complaint, the critical fact is that the trial court's ruling from which Shkolnik appeals was the *first* time a *court* had examined the substance of Shkolnik's causes of action and provided its own assessment of whether any of those claims had been (or could be) adequately alleged.

20

Powell, J. ["'[t]he right to be heard does not depend upon an advance showing that one will surely prevail at the hearing'"]; *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 205 ["'it is no answer to say that . . . due process of law would have led to the same result'"].)  As this court wrote in a different context, "a theater critic must see the play before writing a review . . . ."  (*Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 191.)

The opportunity to be heard is the cornerstone of due process and the foundation of our civil and criminal justice systems.  (See *Hamdi v. Rumsfeld* (2004) 542 U.S. 507, 533 [124 S.Ct. 2633, 159 L.Ed.2d 578]; *Gete v. I.N.S.* (9th Cir. 1997) 121 F.3d 1285, 1297)  Shkolnik must have that opportunity.

### DISPOSITION

The order of dismissal is reversed.  The matter is remanded to the trial court with directions to allow Shkolnik the opportunity to respond to the CitiMortgage defendants' demurrer to the third amended complaint and to set the demurrer for hearing on proper statutory notice.  Shkolnik is entitled to his costs on appeal.

**WOODS, Acting P. J.**

**We concur:**

**ZELON, J.**                    **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.